UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ELISEO ANTONIO ARANGO CARMONA,

               Plaintiff,

       - against -

RAUL MALDONADO, JR., *Warden,
Metropolitan Detention Center*, *et al.*,

              Defendants.

-------------------------------------------------------x

**<u>MEMORANDUM & ORDER</u>**
26-CV-2005 (PKC)

PAMELA K. CHEN, United States District Judge:

On April 3, 2026, Petitioner Eliseo Antonio Arango Carmona filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Pet., Dkt. 1.)  He argues that his detention by U.S. Immigration and Customs Enforcement ("ICE") violates the Due Process Clause of the Fifth Amendment, as well as the Immigration and Nationality Act ("INA") and the regulations promulgated thereunder.  (*Id.* ¶¶ 46–56.)  For the following reasons, the Petition is GRANTED, and Respondents are ordered to release Petitioner from custody immediately and no later than by **noon on Monday, April 13, 2026**.

## BACKGROUND

Petitioner, Mr. Arango, is a 54-year-old asylum seeker from Colombia.  (*Id.* ¶¶ 14–16.)  He states that he fled Colombia "after his brother, a staff member for a public official, was murdered by political opponents in the Polo Democrático Alternativo party," and Petitioner feared that "he and his family would suffer a similar fate on account of his organizing activities on behalf of his brother's party." (*Id.* ¶ 14.)

On September 28, 2024, Petitioner, his wife, and his minor children entered the United States through the U.S.-Mexico border without inspection.  (*Id.* ¶ 15; Resp't's O.S.C. Resp.

("Resp."), Dkt. 5, at 1; Resp. Ex. A ("Notice to Appear"), Dkt. 5, at ECF[1] 5; Resp. Ex. I ("Sep. 2024 Form I-213"), Dkt. 5, at ECF 27–30.) The next day, Petitioner and his family encountered a Border Patrol Agent and were taken into custody by the U.S. Department of Homeland Security ("DHS"). (Sep. 2024 Form I-213, Dkt. 5, at ECF 29.) DHS determined that Petitioner had "no prior criminal or immigration records," and that he and his family were not "a threat to national, border security, or pub[lic saf]ety." (*Id.* at ECF 29–30.) Accordingly, DHS served them with Notices to Appear, initiating removal proceedings, and released them from custody "on their own recognizance pending their scheduled immigration proceedings" under 8 U.S.C. § 1226(a) ("Section 1226(a)"). (*Id.* at ECF 30; *see also* Resp. Ex. C ("Notice of Custody Determination"), Dkt. 5, at ECF 11 (stating that Petitioner was released on his own recognizance under INA Section 236, codified at 8 U.S.C. § 1226); Resp. Ex. D ("Order of Release on Recognizance"), Dkt. 5, at ECF 13 (same).) After being released from custody, Petitioner applied for asylum in the Hartford Immigration Court and obtained employment authorization from DHS. (Pet., Dkt. 1, ¶ 16.) In May 2025, he began working for a construction company called "Greater Home Solutions." (*Id.*)

On February 14, 2026, Petitioner was stopped by an officer of the Port Chester Village Police Department for "driving a motor-scooter that was not yet registered." (*Id.* ¶ 17; *accord* Resp. Ex. J ("Feb. 2026 Form I-213"), Dkt. 5, at ECF 33.) The police department charged him with violating New York's Vehicle and Traffic Law § 509 for operating a motor vehicle without a license, (Feb. 2026 Form I-213, Dkt. 5, at ECF 34), which is a minor "traffic infraction" that is "not a crime" under state law, *see* N.Y. Veh. & Traf. Law § 155. Nonetheless, the police department arrested Petitioner and notified ICE. (Pet., Dkt. 1, ¶ 17; Feb. 2026 Form I-213, Dkt. 5,

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

at ECF 33.)  He was then transferred to ICE custody pursuant to a Warrant for Arrest of Alien (Form I-200) "for illegal entry into the United States."  (Feb. 2026 Form I-213, Dkt. 5, at ECF 33; *see also* Resp. Ex. E ("Form I-200"), Dkt. 5, at ECF 15.)  ICE then determined that Petitioner would "be detained in ICE custody without bond, for the pendency of [his] removal proceedings." (Feb. 2026 Form I-213, Dkt. 5, at ECF 35.)

Petitioner has been in immigration detention since his arrest by ICE on February 14, 2026. (Pet., Dkt. 1, ¶¶ 1, 17.)  He has not received a bond hearing or any other form of individualized custody determination.  (*See id.* ¶¶ 1, 17–18.)  He is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  (*Id.* ¶¶ 1, 17.)  Respondents contend that "Petitioner is subject to mandatory detention pursuant to [8 U.S.C.] § 1225(b)(2)(A)" ("Section 1225(b)(2)(A)").  (Resp., Dkt. 5, at 2.)

Petitioner filed the instant habeas petition on April 3, 2026.  (Pet., Dkt. 1.)  On April 6, 2026, the case was assigned to the undersigned.  (4/06/2026 Case Assignment.)  Later that day, the Court entered an order directing Respondents to show cause, in writing, "why a writ of habeas corpus should not be issued and why Petitioner should not be immediately released."  (O.S.C., Dkt. 4, at 1.)  Respondents filed their response on April 9, 2026.  (Resp., Dkt. 5.)

## DISCUSSION

Respondents do not provide any facts to support their position that Petitioner can be detained under Section 1225(b)(2)(A) contrary to the vast majority of case law in this District and Circuit.  (*Compare* O.S.C., Dkt. 4, at 1 (ordering Respondents to "state what facts, if any, distinguish Petitioner's case from the vast majority of district court cases that have disagreed with Respondents' contention" that Petitioner can be detained under Section 1225(b)(2)(A)), *with* Resp., Dkt. 5 (providing no distinguishing facts).)  Respondents state only that they "acknowledge

3

those cases, including [the Court's prior] decisions . . . , though they and [sic] respectfully disagree with the decisions." (Resp., Dkt. 5, at 2.)

Given that no facts distinguish Petitioner from this Court's prior decisions, the Court adheres to its prior reasoning and holds that Petitioner, who was already in the country when ICE arrested him in February 2026, cannot be detained pursuant to Section 1225(b)(2)(A). That statute requires mandatory detention of noncitizens "seeking admission" while their removal proceedings are pending (absent certain exceptions inapplicable here).[2]  8 U.S.C. § 1225(b)(2)(A); *accord Jennings*, 583 U.S. at 289 (explaining that "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)," and, in contrast, authorizes the Government to detain "certain aliens *already in the country* pending the outcome of their removal proceedings under §§ 1226(a) and (c)" (emphasis added)).  Petitioner— who arrived in 2024, was released by ICE on his own recognizance under Section 1226(a), and has spent over a year living and working in the United States—was not "seeking admission" when ICE re-arrested him in 2026.  *See Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389, at *2 (E.D.N.Y. Feb. 4, 2026) (holding that a petitioner who "arrived in 2023, was released on his own recognizance, and spent several years living and working in the United States" was not "seeking admission" when ICE officers later re-arrested him).  Therefore, Petitioner cannot be detained pursuant to Section 1225(b)(2)(A). *See id.* (concluding that, because the petitioner was not "seeking admission," he was "not subject to mandatory detention" under Section

---

[2] Specifically, mandatory detention does not apply if the noncitizen is "clearly and beyond a doubt entitled to be admitted," *see* 8 U.S.C. § 1225(b)(2)(A), or if the Secretary of Homeland Security discretionarily and temporarily paroles them from custody for "urgent humanitarian reasons or significant public benefit," *id.* § 1182(d)(5)(A). *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (explaining that the "express exception to detention" under 8 U.S.C. § 1182(d)(5)(A) "implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released" under the statutory scheme).

1225(b)(2)(A)); *see also Barco Mercado v. Francis*, 811 F. Supp. 3d. 487, 494, 506 (S.D.N.Y. 2025) ("By a recent count, the central issue in this case—the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States." (collecting cases)).

Rather, Petitioner's detention is governed by Section 1226(a), which provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Yin*, 2026 WL 295389, at *2. Detention under Section 1226(a) is discretionary; immigration authorities "may release" the non-citizen on bond. 8 U.S.C. § 1226(a)(2). "[T]he discretionary authority in [Section] 1226(a) requires an individualized bond determination before a noncitizen may be taken into custody." *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)); *accord Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025) ("[I]t is clear that [Section] 1226(a) requires some exercise of discretion when determining whether or not to detain a noncitizen in the first instance."). Additionally, if an individual like Petitioner has previously been released under Section 1226(a), re-detaining them "requires an immigration officer to exercise discretion to revoke [that] prior release." *Yin*, 2026 WL 295389, at *2 (citing 8 C.F.R. § 236.1(c)(8)–(9)).

Here, Respondents effectively admit that they *did not exercise discretion* to re-detain Petitioner; rather, they detained him under the incorrect assertion that his detention was mandatory pursuant to Section 1225(b)(2)(A). (*See* Resp., Dkt. 5, at 2 (stating that Petitioner is subject to

"mandatory detention" and is being detained under Section 1225(b)(2)(A)).) "Such an assertion is precisely the *opposite* of an exercise of discretion." *Lopez Benitez*, 795 F. Supp. 3d at 495. Respondents detained Petitioner pursuant to the wrong statute, without any individualized custody determination, prior notice, or opportunity to be heard. Accordingly, for the reasons set forth in the Court's prior decisions, and hundreds of other decisions across the country, Respondents' actions violated Petitioner's procedural due process rights. *See, e.g.*, *R.A.R.R. v. Almodovar*, --- F. Supp. 3d ----, 2026 WL 323040, at *4–5 (E.D.N.Y. Feb. 6, 2026) (applying balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concluding that the petitioner's detention under Section 1226(a) violated his procedural due process rights where Respondents erroneously treated the petitioner as subject to mandatory detention under Section 1225(b)); *see also Barco Mercado*, 811 F. Supp. 3d at 504 (holding that the petitioner's detention "pursuant to the wrong statute violated due process"); *M.K. v. Arteta*, No. 25-CV-9918 (LAK), 2025 WL 3720779, at *8–9 (S.D.N.Y. Dec. 23, 2025) ("Having determined that [Section 1225(b)] is inapplicable to [an individual living in the United States for over two years], the Court concludes that [the petitioner's] detention pursuant to the wrong statute is unlawful."); *Yao v. Almodovar*, 813 F. Supp. 3d 461, 476 (S.D.N.Y. 2025) (concluding that "ICE's discretion-free detention of [the petitioner] abridged his rights under [Section] 1226 and violated due process," and collecting cases holding the same).

The appropriate remedy for Petitioner's unlawful detention is release. *See Yao*, 813 F. Supp. 3d at 477 ("A bond hearing after the fact, by definition, would not and cannot cure [the] constitutional violation. Although [the petitioner's] release today cannot cure his loss of liberty . . . , this remedy, relative to the procedural one of ordering a bond hearing, is the one that comes closest to doing so." (collecting cases ordering same remedy)); *Y-C- v. Genalo*, No. 25-CV-6558 (NCM), 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) (concluding that "no

relief short of petitioner's immediate release would be appropriate or sufficient" in the case in light of the constitutional violations suffered).

## CONCLUSION

The Petition for Writ of Habeas Corpus, (Pet., Dkt. 1), is GRANTED. Respondents are ordered to release Petitioner from custody immediately and no later than by **noon on Monday, April 13, 2026**. Respondents are ordered to release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty. Respondents are further directed to return to Petitioner any and all funds and property seized from Petitioner at the time of his arrest. Respondents are directed to certify compliance with the Court's Order by filing a letter on the docket no later than **6:00 p.m. on April 13, 2026**.

The Court further orders that Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court. Petitioner must not be re-detained by Respondents without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, at which Respondents will have the burden of showing that Petitioner's re-detention is authorized under a statutory authority other than Section 1225(b)(2)(A).

Petitioner's deadline to apply for fees under the Equal Access to Justice Act is within thirty (30) days of a final judgment in this action. *See* 28 U.S.C. § 2412(d)(1)(B). The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 10, 2026
      Brooklyn, New York